UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JASON J. SCHULTZ,
    Plaintiff,

v.    CIVIL ACTION NO. 15-10020-PBS

THOMAS ALEXANDER GROBLEWSKI,
    Medical Director, MPCH,
GERALDINE SUMMERS, M.D. S.B.C.C.,
JULIE IRELAND, HSA S.B.C.C.,
LINDA ALBOLN, MPCH Grievance
    and Appeal Coordinator,
JANE DOE, DON MCI CEDAR JUNCTION,
JENNY VIEIRA, NP MCI CEDAR JUNCTION,
JANE DOE, M.D. MCI CEDAR JUNCTION,
VANESSA RATTIGAN, HSA MCI CEDAR JUNCTION,
JEFFREY FISHER, ACTING HSA,
    MCI CEDAR JUNCTION,
    Defendants.

REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION TO DISMISS
AND/OR FOR SUMMARY JUDGMENT (#39).

KELLEY, U.S.M.J.

On January 20, 2015, pro se plaintiff Jason J. Schultz commenced this action against defendants Thomas Alexander Groblewski, Medical Director, MPCH, Geraldine Summers, M.D.,[1] Julie Ireland, HSA S.B.C.C., Linda Alboln, MPCH Grievance and Appeal Coordinator,[2] Jane Doe,

---

[1] It appears that this defendant's last name is properly spelled Somers. *See* #39 at 1. For clarity and consistency, Ms. Somers will be referred to throughout as Defendant Summers, the way she is named in the complaint.

[2] Linda Alboln, properly spelled Albohn, has changed her name to Linda Farag. (#40 at 2 n. 3.) For consistency and clarity, Ms. Farag will be referred to throughout as Defendant Alboln, the way she is named in the complaint.

DON MCI Cedar Junction, Jenny Vieira, NP MCI Cedar Junction, Jane Doe, M.D. MCI Cedar Junction,[3] Vanessa Rattigan, HSA MCI Cedar Junction, and Jeffrey Fisher, Acting HSA MCI Cedar Junction (collectively, "Defendants") for violations of 42 U.S.C. § 1983, the Eighth and Fourteenth Amendments, and Article XXVI of the Massachusetts Declaration of Rights that allegedly occurred while Plaintiff was incarcerated at the Massachusetts Correctional Institute at Cedar Junction ("MCI-CJ") and the Souza Baranowski Correctional Center ("SBCC"). Now before the Court is Defendants' motion to dismiss and/or for summary judgment (#39) which has been fully briefed. (#40, 42-45.) The dispositive motion shall be treated as one for summary judgment[4] since the Court will be relying on materials outside the four corners of the complaint[5] when recommending a

---

[3] Jane Doe, M.D., is identified as Rebecca Lubelczyk, M.D. (#40 at 2 n. 5.) For consistency and clarity, Dr. Lubelczyk will be referred to throughout at Defendant Jane Doe, M.D., the way she is named in the complaint.

[4] There is no prejudice in doing so since Plaintiff has filed a declaration (#44) and a statement of disputed facts (#45) in addition to a memorandum (#43) in opposition to the motion.

[5] The Court would be able to consider several of the exhibits submitted by Defendants in the context of a motion to dismiss. The First Circuit has repeatedly stated that when deciding a motion to dismiss, "'[o]rdinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . .'" *Graf v. Hospitality Mut. Ins. Co.,* 754 F.3d 74, 76 (1st Cir. 2014) (quoting *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001)). With that having been said, the First Circuit has also " noted that when a complaint's factual allegations are expressly linked to — and admittedly dependent upon — a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." *Trans-Spec Truck Service, Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008) (internal citations, quotation marks and alterations omitted), *cert. denied*, 555 U.S. 995 (2008); *Yacubian v. U.S.*, 750 F.3d 100, 102 (1st Cir. 2014); *United Auto., Aerospace, Agr. Implement Workers of America Intern. Union v. Fortuno*, 633 F.3d 37, 39 (1st Cir. 2011). Copies of Plaintiff's grievances (#40-1, Exh. C, D, E, G, H, I, J) fall within the parameters of this exception as documents specifically referenced in the complaint. *See,* e.g.*, Watterson v. Page,* 987 F.2d 1, 3 (1st Cir.1993) ("[C]ourts have made narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to the plaintiffs' claim; or for documents sufficiently referred to in the complaint."). The Affidavit of Linda Farag, LPN (#40-1, Exh. A) and MPCH's Clinical Grievance Mechanism - Policy 12.00 (#40-1, Exh. B) do not, therefore the summary judgment standard must be applied.

disposition.

## I. THE FACTS.

Plaintiff alleges that his causes of action arose beginning on September 30, 2014 when he was an inmate at MCI-CJ. (#1 ¶ 21.) Upon entering the correctional facility, Plaintiff was given an intake medical examination during which he informed the examining nurse that he suffered from seizures and other medical issues including asthma. (#1 ¶ 22.)  He also informed the nurse of medications that he was taking for these conditions. (#1 ¶ 23.)  The nurse advised Plaintiff that he would be unable to receive the medications Gabapentin and Wellbutrin per the Massachusetts Partnership for Correctional Healthcare (MPCH) policy. (#1 ¶ 24.)

In July of 2013 the Massachusetts Department of Correction contracted with MPCH to provide medical service to inmates at MCI-CJ and SBCC. (#40-1, Exh. A ¶ 2.)  MPCH has a Grievance and Appeal Coordinator, Defendant Albohn, whose job it is to monitor, investigate and follow up on inmate grievance appeals. (#40-1, Exh. A ¶¶ 1, 3.) When her investigation of an appeal is complete, Defendant Albohn responds directly to the inmate with her decision and also forwards her report to the appropriate MPCH personnel. (#40-1, Exh. A ¶ 3.)

MPCH has a Clinical Grievance Mechanism - Policy 12.00 in place pursuant to which inmates at MCI-CJ and SBCC may complain about any medical care issues. (#40-1, Exh. A ¶ 4; Exh. B.)  Clinical Grievance Mechanism - Policy 12.00 incorporates a three-step process inmates are required to follow.  (#40-1, Exh. A ¶ 4; Exh. B at 2-4.)  Initially, inmates must pursue an informal complaint, meaning they must talk to the Health Service Administrator ("HSA") at the correctional facility where they housed about the medical care issue. (#40-1, Exh. A ¶ 4; Exh. B at 2.) If the issue is not resolved to the inmate's satisfaction at the informal complaint stage, the inmate

3

may advance to step two, which involves the inmate completing an Inmate Medical and Mental Health Grievance & Appeal Form. (#40-1, Exh. A ¶ 4; Exh. B at 2-3.)  The HSA at the correctional institution responds to the inmate's formal grievance. *Id.*  If the inmate is not satisfied with the response to his grievance, he may proceed to step three of the process, which consists of the filing of a formal appeal with the MPCH Grievance and Appeal Coordinator at MPCH's headquarters. (#40-1, Exh. A ¶ 4; Exh. B at 3-4.)  The Clinical Grievance Mechanism - Policy 12.00 provides that "[w]hen an appeal is received, the Grievance and Appeal Coordinator will verify it has gone through the appropriate process, as set forth in this policy.  If the appeal has not gone through the appropriate process, the inmate will be informed by letter and given the opportunity to file appropriately." (#40-1, Exh. B at 3.)  The provisions of Clinical Grievance Mechanism - Policy 12.00 mandate that a formal appeal may be filed by an inmate "about medical, dental or mental health related concerns only after dissatisfactions with a response to a formal grievance." (#40-1, Exh. A ¶ 5; Exh. B at 3.)  A decision on the appeal is to be made within thirty working days of receipt of the appeal, and that decision is final. (#40-1, Exh. A ¶ 4; Exh. B at 3.)

     Between October 1, 2014 and October 6, 2014, Plaintiff was examined by MPCH medical and mental health staff. (#1 ¶ 25.)  During these evaluations Plaintiff explained his health concerns regarding seizures and chronic pain, and told Defendant Vieira that he felt she was being deliberately indifferent to his medical needs by failing to prescribe the medication he requested. (#1 ¶¶ 26-27.) On October 8, 2014, Plaintiff filed an "Inmate Medical and Mental Health Grievance and Appeal Form" ("Grievance I") with Defendant Fisher. (#1 ¶ 28; #40-1, Exh. C.)  The text of the complaint and remedy requested in Grievance I is as follows:

> I was assaulted by employees of the Essex County Sheriffs office on 4-6-10 where I suffered a mid-nasal ridge fracture[,] permanent nerve

> damage to my center and lower back to the left and right of my spine, also my left hand and arm. I also suffered permanent disfigurement to my face. I have a[n] open civil action Schultz v. Cousins et al, 12-10340-MLW in U.S. District Court for torts and a[n] eighth amendment violation (I take gabapentin four times a day for my injuries. 800 mg 4x daily.)
>
> I'm requesting monetary and injunctive relief due to this facility denying me adequate medical care. I am seeking compensatory damages for an unspecified amount for the forementioned explaination (sic). I also request my DOC medical records.

(#40-1, Exh. C.) Grievance I was denied by Defendant Fisher on October 14, 2014 for failure to attempt to resolve his concerns by informal methods before filing a formal grievance and failure to state a specific concern. (#1 ¶¶ 28-29; #40-1, Exh. C.)

On November 7, 2014, Plaintiff filed a second medical health grievance ("Grievance II"), this time with Defendant Rattigan. (#1 ¶ 30; #40-1, Exh. E.) Plaintiff alleges that "he voiced he has seizures, nerve damage, and is in pain." (#1 ¶ 30) In Grievance II, Plaintiff demanded his "seizure and nerve damage medication Gabapentin immediately." (#40-1, Exh. E.) Grievance II was denied by Defendant Rattigan on November 14, 2014 with Plaintiff being advised that his treatment plan was non-grievable and that there was "no clinical indication for the use of Gabapentin for seizure disorders." (#1 ¶ 31; #40-1, Exh. E.) On November 25, 2014, Defendant Alboln received Plaintiff's appeal, dated October 17, 2014 (#40-1, Exh. D), of the November 14, 2014 denial of Grievance II. (#1 ¶ 32; #40-1, Exh. F). Schultz contends on the one hand that no action was taken on the appeal (#1 ¶ 19), and then, conversely, that Defendant Alboln denied the appeal on November 25, 2014. (#1 ¶ 32.) Defendant Alboln states that she responded by letter dated December 4, 2014 informing Plaintiff that his appeal could not be dated before the original denial of Grievance II, and advised him that he could resubmit the grievance appeal with the proper date. (#40-1, Exh. A ¶¶ 8, 9; Exh.

F.)  Plaintiff did not resubmit another grievance or appeal regarding Gabapentin in response to Defendant Alboln's letter. (#40-1, Exh. A ¶ 10.)

On November 11, 2014, Plaintiff suffered a seizure in the MCI-CJ housing unit. (#1 ¶¶ 33-35.)  Medical treatment was provided by the MPCH medical staff for facial injuries he sustained; Schulz remained in the Medical Observation Unit for approximately three days during which time he was not given "any seizure, nerve damage, or pain medication." (#1 ¶¶ 35-39.)  Plaintiff was examined by Defendant Jane Doe, M.D., on November 13, 2014 as a follow-up to his seizure. (#1 ¶¶ 39-42.)  Plaintiff again requested a prescription for Gabapentin, but Defendant Jane Doe, M.D., informed him that it was her professional opinion that Gabapentin was not medically necessary and that it was "not a 'good' seizure medication." (#1 ¶¶ 41-42.)  Defendant Jane Doe, M.D., did not order any nerve damage or seizure medication for Schultz. (#1 ¶ 42.)

Plaintiff was transferred from MCI-CJ to SBCC on December 31, 2014. (#1 ¶ 45.)  Plaintiff alleges that Defendants Ireland and Summers were aware of his medical conditions as a new transfer to the SBCC facility and should have provided him with the medications and treatment he specifically requested. (#1 ¶ 45.)

## II. THE SUMMARY JUDGMENT STANDARD.

The purpose of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Tobin v. Federal Express Corp.*, 775 F.3d 448, 450 (1st Cir. 2014) (internal quotations marks and citation omitted).  When considering a motion for summary judgment, "a court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  Summary judgment would be inappropriate "if

6

the record is sufficiently open-ended to permit a rational factfinder to resolve a material factual dispute in favor of either side." *Pierce v. Cotuit Fire District*, 741 F.3d 295, 301 (1st Cir. 2014).

The moving party bears the initial burden of asserting the absence of a genuine issue of material fact and "support[ing] that assertion by affidavits, admissions, or other materials of evidentiary quality." *Mulvihill v. Top-Flite Golf Co.*, 335 F.3d 15, 19 (1st Cir. 2003) (citations omitted). A genuine issue of fact exists where a factfinder could find in favor of the non-moving party, "while material facts are those whose existence or nonexistence has the potential to change the outcome of the suit." *Green Mountain Realty Corp. v. Leonard*, 750 F.3d 30, 38 (1st Cir. 2014) (internal quotations marks and citation omitted). "Once the moving party avers the absence of genuine issues of material fact, the non-movant must show that a factual dispute does exist, but summary judgment cannot be defeated by relying on improbable inferences, conclusory allegations, or rank speculation." *Fontánez-Núñez v. Janssen Ortho LLC*, 447 F.3d 50, 54-55 (1st Cir. 2006) (internal quotation marks and citation omitted).

In determining whether summary judgment is proper, evidence is considered "in the light most favorable to the non-moving party" and "all reasonable inferences" are drawn in his favor. *Ahmed v. Johnson*, 752 F.3d 490, 495 (1st Cir. 2014). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (further

internal quotation marks omitted)).

### III. DISCUSSION.

Plaintiff alleges that by their actions, Defendants have violated of his rights under 42 U.S.C. § 1983, the Eighth and Fourteenth Amendments to the United States Constitution, and Article XXVI of the Massachusetts Declaration of Rights. Defendants seek the entry of judgment as a matter of law in their favor because Plaintiff has failed to exhaust the administrative remedies available to him before seeking redress under federal law in violation of the Prison Litigation Reform Act ("PLRA"). *See Woodford v. Ngo*, 548 U.S. 81 (2006).

By its terms, the PLRA mandates that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Title 42 U.S.C. § 1997e(a).  In order "to properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules' . . . rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford*, 548 U.S. at 88).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford,* 548 U.S. at 90-91.  An inmate may not avoid this requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Id.* at 83-4.  The Supreme Court has plainly stated that "'proper exhaustion' [is] required under the PLRA, and . . . this requirement [is] not satisfied when grievances were dismissed because prisoners had missed deadlines set by the grievance policy." *Jones*, 549 U.S. at 217-218.

Massachusetts state law also incorporates exhaustion of administrative requirements.  *See*

Mass. Gen. L. c. 127, §§ 38E and 38F ("An inmate shall not file any claim that may be the subject of a grievance under section 38E unless the inmate has exhausted the administrative remedy established pursuant to said section 38E."). The Massachusetts Appeals Court has explained that:

> As in the case of the Federal Prison Litigation Reform Act, the 1999 amendments to G.L. c. 127, which directed the establishment of a grievance process for inmate complaints, were intended to stem the tide of frivolous litigation by prison inmates. See *Longval v. Superior Court Dept. of the Trial Court*, 434 Mass. 718, 718-719, 752 N.E.2d 674 (2001). Both Federal and State law now expressly require inmates to exhaust available grievance procedures before going to court.

*Ryan v. Pepe*, 65 Mass. App. Ct. 833, 838-39, 845 N.E.2d 1136, 1141 (2006); *Gaskins v. Marshall*, 84 Mass. App. Ct. 1134, 3 N.E.3d 110 (Table), 2014 WL 470408, at *1 (Mass. App. Ct. Feb. 7, 2014).

Here, the procedural requirements for exhaustion of administrative remedies were laid out in the MPCH's Clinical Grievance Mechanism - Policy 12.00. (#40-1, Exh. B.)  Grievance I, which Plaintiff filed on October 8, 2014, was denied by Defendant Fisher because Plaintiff did not follow the three-step process and, further, Defendant Fisher was not able to determine what Plaintiff was particularly requesting. (#40-1, Exh. A ¶ 7; Exh. C.) Plaintiff does not allege that he filed an appeal with respect to Grievance I, nor does the record reflect that he, in fact, did so. (#40-1, Exh. A ¶¶ 6-7.)

Plaintiff's Grievance II was filed November 7, 2014 and denied by Defendant Rattigan on November 14, 2014. (#40-1, Exh. A ¶ 8; Exh. C). Plaintiff filed an appeal of the denial of Grievance II dated October 17, 2014. (#40-1, Exh. D.)  The Clinical Grievance Mechanism - Policy 12.00 specifically provides that a formal appeal may be filed by an inmate "about medical, dental or mental health related concerns only after dissatisfaction with a response to a formal grievance."

9

(#40-1, Exh. A ¶ 5; Exh. B at 3.) Because the appeal of Grievance II was dated prior to the date that Grievance II was denied, Defendant Alboln wrote to Plaintiff as follows:

> I am in receipt of your date 10/17/14 appeal being received on 11/25/14. While I understand grievance #76926 was responded to on 11/14/14 by Ms. Rattigan, RN, HSA, this appeal is being returned to you, since an appeal cannot be filed before a grievance has been responded to. If you are unsatisfied with the grievance response, please resubmit the grievance with the proper date. Please be assured, if you need to resubmit and appeal, it will be investigated and responded to promptly.

(#40-1, Exh. H.) This letter is in accordance with MPCH's Clinical Grievance Mechanism - Policy 12.00. (#40-1, Exh. B at 3 ("If the appeal has not gone through the appropriate process, the inmate will be informed by letter and given the opportunity to file appropriately.")). Plaintiff does not allege that he resubmitted an appeal with respect to Grievance II, nor does the record reflect that he, in fact, did so. (#40-1, Exh. A ¶¶ 6-7.)

Plaintiff states that he:

> [f]ollowed MPCH Policy and procedure contradictory to Defendant's (sic) claims, as Plaintiff filed his Medical Grievance and Medical Appeal in timely fashion. The date of October 17, 2014 is of no consequence as MPCH Personnel Linda Alboln was fully informed and had personal knowledge of the actual filing dates as Linda Alboln, LPN, deposes in an affadavit (sic) (Exibit (sic) A Def.) Paragraph 8; 'On November 25, 2014, I received an Appeal Form from Inmate Schultz dated October 17, 2014. Upon investigating, I learned Inmate Schultz had filed a grievance with the HSA at MCI-Cedar Junction on November 7, 2014. I also discovered that HSA Vanessa Rattigan, RN, had responded to this grievance on November 14, 2014.'

> Further, MPCH Personnel Linda Alboln, LPN, Per MPCH Clinical Grievance Mechanism - Policy 12.00 (def. Exibit (sic) A), would have had proper notification in compliance with Formal Process paragraph 6, 7, and 8; 'All grievances shall be entered into IMS, by HSA, on the date they are recieved (sic).' Finally, "Inmate-Patient Grievances must be logged and the original complaint (if written)

> filed by HSA. A copy of the grievance, and the HSA or Designee's response, shall be forwarded to the MPCH Grievance and Appeal Coordinator.'

(#44 ¶¶ 9-10; *see also* #43 ¶ 13A.) The purported state of Defendant Alboln's knowledge is of no consequence to the exhaustion analysis. Plaintiff does not deny that his appeal of Grievance II was dated October 17, 2014, and that that October date was prior to the date that Grievance II was denied. It is undisputed that MPCH's Clinical Grievance Mechanism - Policy 12.00 requires that an appeal not be filed until after a grievance is denied. On its face, Plaintiff's appeal of Grievance II contravenes the appeal provisions of MPCH's Clinical Grievance Mechanism - Policy 12.00. Plaintiff was notified that his appeal was returned because an appeal dated October 17, 2014 was not a valid appeal date for a grievance that was originally denied on November 14, 2014 and he was afforded the opportunity to re-file his appeal with the proper date, all in accordance with the Clinical Grievance Mechanism - Policy 12.00. It is undisputed that Plaintiff never re-filed his appeal of Grievance II.

In sum, no genuine issue of material fact exists on the question of exhaustion of administrative remedies - Plaintiff has failed to do so. Because Schultz has not properly exhausted all of his administrative remedies, the PLRA and Massachusetts state law require the dismissal of his claims.

## IV. RECOMMENDATION.

For the reasons stated, I RECOMMEND that Defendants' Motion To Dismiss and/or for Summary Judgment (#39) be ALLOWED, and that judgment enter in favor of Defendants.

## V. REVIEW BY THE DISTRICT JUDGE.

The parties are hereby advised that any party who objects to these recommendations must

file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed. R. Civ. P., shall preclude further appellate review. *See Keating v. Secretary of Health and Human Services*, 848 F.2d 271, 273 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 604 (1st Cir. 1980); *see also Thomas v. Arn*, 474 U.S. 140, 148-49 (1985).

January 25, 2016                                     /s/ M. Page Kelley
                                                                 M. Page Kelley
                                                                 United States Magistrate Judge